And the next case on our docket, which is 22-1263, Teresa Harrison v. Port Authority of New York and et al. We'll note for the record that Al, in this case, is New Jersey. And we'll give counsel a minute to get settled at their desks up here. And Attorney Jones, I understand that you would like to reserve three minutes for rebuttal. Is that right? I would, Your Honor. Okay. And if you need help with that, perhaps our CSO can just help with the... I think it's fine. You got the button? It's fine. Well, we want you to be comfortable. Both of the microphones weren't together, so you're going to want to... I think it's fine. And you may proceed whenever you are ready. Good morning, Your Honors. Good morning. My name is Lisa Jones on behalf of Teresa Harrison. May it please the Court. The trial in this case, Your Honors, was a shameful horse race for the sake of the race instead of for the sake of the administration of justice. It denied Ms. Harrison a fair trial. It denied her an opportunity to confront her witnesses. And it was unconstitutional. Now, when this time limit was set, did you object to that time limit? Your Honor, at the time that the... Well, that's a kind of yes or no question, and you can explain your answer and have plenty of time to do it. Did you object at the time that the time limit was set? I made my record of what we needed. Well, explain to me how you made a record at the time the time limit was set that you thought the time limit was too short. Where in the transcript is there any statement to that effect? There was three pretrial statements, Your Honor, three, in which the parties prepared and told the judge that we needed one week. No, you explained what you needed, and first Judge Pauley, who had the case at one time, set a different time limit than you had asked for. And then when the case was transferred to Judge Cote, she set a different time limit. Did anyone say, no, that's too little at that time? Your Honor, at what point does... Anne, could you answer Judge Lynch's question? No, but at what point, Your Honor, does the record, does a litigant... Judge Lynch is asking a question. I thought I answered it, but okay. How about at the point where you ran out of time? Was there any record made as to what exactly you needed to do that you did not have time for? Your Honor, the record was in the pretrial statement. The record was in the motion in limine to which Ms. Harrison raised issues with regard to the authentication of the defendants' recordings, the radar, and the court indicated that we would be allowed to cross-examine and to raise the issue of the reliability of the documents. It was inherently prejudicial, Your Honor, under any circumstance. It's inherently prejudicial to give a litigant five minutes of cross-examination. That denies the litigant the right to confront his witnesses. Just for the record, I've been on plenty of trials where a judge did that to us. I've done it. I'm sorry? I participated when I was a litigant in many instances where a judge did precisely that. As have I, Your Honor. So you're saying that every single time that happens, it is inherently unconstitutional? In this matter, yes. In a matter in which bias and an inference of discrimination is the critical issue in the case. In a case where the defendant was successful in hiding the primary bias and tort visa, where Ms. Harrison was required, and this is the important issue in terms of your question, Your Honor, Judge Lynch. At the time of the pretrial hearing, I understood that James Mundy would be available. James Mundy made himself inavailable. The government, the defendant, made James Mundy unavailable. What is the evidence that the defendant made Mundy unavailable? The evidence is that Mundy was a senior executive for the Port Authority. But I take it he was not at the time of the trial. I thought he was retired at the time. At the time of the pretrial hearing, I had no idea what the circumstances. I assumed that he was still an employee of the Port Authority. So how did the government make him unavailable? That comes back to the original question. If he was retired at the time of trial, tell us what the government did to make him unavailable. A, he was an employee of the Port Authority, a senior employee of the Port Authority who had executive authority to bind the defendant. You're describing, but I thought that's before the trial. I'm sorry? I thought that's before the trial. During the pretrial hearing- No, no, no. I assume that he knows. Let me be clear. I may not be making my question clear. At the time of trial, that is the window of time I'm speaking of, what did the government do to make him unavailable? They indicated that they would not make him available. They gave me two weeks, two and a half weeks. They notified me two and a half weeks before trial was to start. And this was, again, if I had James Mundy, I didn't need all this other stuff. So you're saying that two and a half weeks before trial, they told you that they wouldn't make him available and it was up to you to do it? Yes. And so that gives you two and a half weeks to serve him and have him come to the trial. By that point, the process server goes to his house and he, on his ring bell, he tells the process server, oh, well, I'm not available. I'm indisposed. Doesn't that happen all the time? I mean, isn't that just one of the perils of litigation? You've got to track down your witness? This is the defendant's witness who has the authority to bind the government. But they're not. They're not calling him. Why are you calling them their witness? Because he's the tortfeasor. He's the tortfeasor. But the issue is, Your Honor, is that at the time of the pretrial hearing, I assumed that he was going to be available. But you also had his deposition, right? But the deposition was not a deposition done in preparation of the trial. So I need it to lay certain foundations for the admission and the admissibility of certain evidence that he testified to. The defendant objected. But the issue is Did you put to the trial judge that Mr. Mundy was defying service of process and that you would like to use his deposition? Yes, Your Honor. And did the court say no, you can't use his deposition? We went back and forth. The deposition was long. I'm sorry. I just have trouble getting answers to questions. Did the judge say no, that is inadmissible because it's hearsay or for some other reason? Yes. And where is that in the record? Well, I have it at the top of my head. I can't give you the top. But it's my recollection that we had many colloquies about the deposition. The defendant objected. Before trial, we had a motion practice on the deposition. Maybe I can cut to the chase further. I did not think you were appealing on the ground that you were forbidden to use a deposition that you should have been allowed to use. I thought the question was just time limits. And what I was focused on in asking these questions about the deposition was isn't that something you could have planned for to allow time to use the deposition? And I think your response was, well, you were forbidden to use the deposition anyway because apparently the defense objected, and you're telling us that the judge said you can't use the deposition. We could not use the deposition to the extent that we certainly weren't going to be able to use the entire deposition because the deposition was over six hours. Well, look, I've litigated many trials, and you come to the judge and you say, here's the deposition. We've marked the parts we want to use. And the other side says, here's our counter copy of the deposition where we've objected to the various things, saying, no, they can't use this and they can't use that. And then the judge rules on that. And the judge did to the extent that the most material issues that Mr. Mundy testified to were objected to, and the judge granted those objections. And you are not appealing that ruling as far as I can see. There's nothing in your brief that says this was error by the judge. No, I'm not appealing that issue. But you asked the question. But the issue is you asked me whether I objected at the time of the pretrial hearing. Okay. I think what we're going to do is we're going to pause now because- I see. I'm out of time. Well, yeah. And you may use that three minutes of rebuttal if you prefer to now, or you may save it for rebuttal. I'll save it for rebuttal. Very good. Why don't we hear from counsel for the Appellee, Attorney Alterman. May it please the court. My name is Cheryl Alterman. I'm representing the defendant, Appellee, the Port Authority of New York and New Jersey. Your Honors, the jury correctly found that there was no Title VII violation when the Port Authority terminated Teresa Harrison's probationary employment as a result of her committing a runway incursion on December 22nd, 2016, which the evidence was clear throughout the course of this trial that that's the most serious violation that an operations service supervisor or anyone at the airport can commit because of the safety implications as a result of that runway incursion that she committed. Yeah, that is all true. But of course, we had a trial here. And we had a trial here because evidently the judges who decided pre-trial summary judgment motions thought there was an issue of fact as to whether Ms. Harrison had done that, and as to whether she did it or not. The decision to fire her was infected by bias. That's why we had a trial. The argument by the plaintiff is not, I take it, that, I mean, I don't understand what the first point is in the brief. I thought it was just setting up the idea that there really is an issue for trial, which I would take for granted anyway. The principal argument is that the trial was unfair. So why don't you address that? Yes, Your Honor. And as the court has correctly pointed out, plaintiffs' counsel never objected to the time limits that were imposed at any point in time during the pre-trial conferences, which we had numerous pre-trial conferences before Judge Pauly. We then had pre-trial conferences with Judge Cote when the case was transferred to Judge Cote. And when Judge Cote indicated to the parties that both sides would be limited to six hours excluding summations, there was no objection by either party. When we proceeded with the trial, there was two months between the last pre-trial conference on March 8th, 2022, and when we started on May 4th, 2022, where both sides were given strict instructions by the court to narrow their witness list, make sure that you can heed guidance to the court's time limits that were going to be imposed, and the court authority did so. We cut our witness list. We cut our documents to ensure that the trial would be streamlined. Plaintiffs' counsel didn't adhere to those instructions, which is evident by the fact that the first two witnesses used the majority of her time. It was four hours and 46 minutes were used between the plaintiff's testimony and for Cameron Boyer's testimony. And in that four hours and 46 minutes, even at that point in time, plaintiffs' counsel did not raise before Judge Cote that there was an issue with her receiving a fair trial because she was just shy of her six hours. Once Judge Cote realized that the plaintiffs' counsel was going to run out of time, she sua sponte gave her five minutes of additional time to cross-examine all the defense witnesses, which, again, there was no objection to. So it's our contention that plaintiff has waived her right to appeal this issue because if she had an objection to the time limits imposed throughout this trial, she had an obligation to raise that objection with the court so the district court would have an opportunity to cure it if they felt that there was a need to cure it or to enlarge the time that plaintiffs' counsel would need to present her case. But there was never an objection to be made. And even post-trial, there was no motion to set aside the verdict based on that, based upon the fact that she ran out of time. And Judge Cote routinely, throughout the trial, told both parties how much time that we were both using at the end of each day. In fact, she admonished plaintiffs' counsel and instructed her that you're going to run out of time. It's throughout the record. There's multiple references by Judge Cote that this was going to be an issue that she was going to run out of time. I just would like to address briefly the issue of James Munday. There's absolutely no evidence that the Port Authority made him unavailable. When plaintiffs' counsel finally gave the Port Authority her final witness list of who she intended to call and James Munday was on that list, we advised her that he was no longer employed by the Port Authority. And like with every witness who's no longer employed by a government agency, he has to be subpoenaed. We provided his last known address that we have with our Human Resources Department. And as she has pointed out, she was given more than two and a half weeks before the trial day to subpoena him. Although unsuccessful, again, she never raised this to the court that she was unable to secure his attendance for trial. If she felt that he was the main tortfeasor or her most critical witness for a plaintiff's case in chief, she should have made extra steps to secure his attendance for trial. If there are no further questions, I'll rest on our papers. Thank you for your time. Thank you very much. Why don't we hear from Attorney Jones who's reserved three minutes for rebuttal. Yes, Your Honor. Your Honor, the defendant's recitation as it relates to James Munday is, I submit to you wholly disingenuous. Again, by the time of the last pre-trial- You know the word disingenuous means dishonest, right? I just want to warn you, that is a very serious accusation to lob at another lawyer. So I want to just remind you what the word means. It means you're accusing them of conscious dishonesty. Now, if you wish to proceed, you may. I submit, Your Honor, that the facts establish that at the time of the pre-trial hearing, where it was known that Mr. Munday was on our witness list, Mr. Munday had already been retired and had been retired for at least a couple months by that point. And it wasn't until well after the pre-trial hearing that we were advised that he was no longer a member or employee of the defendant. That's all I'm suggesting. But so what? Because you had two and a half weeks to subpoena him, and you did subpoena him. So the problem isn't that you didn't have the time to subpoena him. The crux of that issue, as it relates to Munday, is that my trial strategy had to change as a result of that. Yes, of course it did. Of course it did. Excuse me. That happens in litigation. And what you do then, if what you find out is that this guy is defying the subpoena, is you come back to the judge and you say, look, we should hold this guy in contempt. We have to do something to get him here. You start to take steps to make that happen. And if that can't happen or if he is genuinely ill and can't come to the trial, then you ask to adjourn the trial. Or if he is terminally ill and he's never going to be able to do it, then you make the pitch for putting in evidence that might otherwise be excluded if he were available on the grounds that this is an unavailable witness and you have his prior testimony under oath that you can use. There are steps that you can take. And I'm having trouble understanding why it's their fault that you didn't take them. It's their fault because, well, we're talking to the extent that we're talking about the time lapse. And I understand what you're saying in terms of trying to hold Mr. Munday in contempt. I'm not sure that at the time, based on what I knew and what he had represented to the process server, I had enough information to be able to make those representations. So instead, I needed to establish his bias as a reason why the defendant did not choose to hold him. I needed to establish his bias. And did you go back to the judge then and said, I know you set this time limit, but listen, things have changed. Stuff has happened. My trial strategy would have fit within this number of hours or might have fit within this number of hours, but now it won't anymore because we have this problem with Munday. The reality, Your Honor, I hear you. The reality of as a trial lawyer in front of this particular judge to the extent that I, for instance, when she raised the issue about the extent of Ms. Harrison's testimony. Ms. Harrison was the plaintiff who needed to establish many things from damages to competency. She needed to connect to the jury. The idea that it was not appropriate or unreasonable to have the plaintiff on the stand for three hours was more than appropriate. And so when the judge said some things in terms of pushing back on the amount of time Ms. Harrison was on the stand, that I reminded her that Ms. Harrison had the burden of proof. The defendant didn't have the burden of proof. Okay. Speaking of time limits, we've kept you up considerably past yours. And I appreciate your time. We appreciate the arguments of both sides and we will also reserve decision in this case.